Allen, J.
The single question involved in this case is this: Is an administrator who defends an action for specific performance of a contract to make a will alleged to have been made by his decedent, if unsuccessful in the defense, entitled to reimbursement for attorney fees and other expenses incurred by him in the contest?
*565 It is the 'well-settled rule in Ohio that the executor who unsuccessfully defends a will contest cannot charge the expense of the defense to the estate. (Andrews’ Exrs. v. Andrews’ Admrs., 7 Ohio St., 151.) And this is true even though under the statute the executor is a necessary party to the suit. (Thurston v. Ludwig, 4 Ohio App., 486.) This holding is based upon two grounds: First, that those who are entitled to the estate should not be compelled to pay the expenses of their opponents, as well as their own, in conducting the very suit which vindicates their claim; second, that an executor is entitled to defend the trust estate, but not the trust relationship, and in defending the will contest he is endeavoring to maintain the trust relation.
Plaintiff in error claims that this is a case analogous to a will contest. She urges that the same reasons for disallowing the expenses of unsuccessfully defending a suit exist when an administrator fails in his defense of a suit for specific performance of a contract to make a will as exist in a will contest, and that therefore the administrator cannot be reimbursed for attorney fees expended in the suit for specific performance. The defendant in error maintains that the suit is not a suit for specific performance, but a claim for breach of contract to make a will, which fact requires him to defend this claim against the estate just as he would any other contract claim; that he believed a will would be discovered later, and was therefore forced, on behalf of possible legatees under the will which' might be found, to defend the action brought by Eebecca Foltz; and that he defended in good faith and is therefore entitled to reimbursement.
*566 The question first arises whether plaintiff in error’s suit against the heir and administrator was one for breach of contract, and not a suit for specific performance, as defendant in error claims in his endeavor to emphasize the difference between this action and a will contest.
Examining the petition for the purpose of deciding this point, we find that the petition alleges that the decedent, Mary Snyder, twice proposed to plaintiff to transfer and convey to plaintiff, to be effective at her (Mary Snyder’s) death, her real and personal property in consideration of plaintiff’s care and service already performed and to be performed in boarding and caring for her (Mary Snyder) during the balance of her life; that Mary Snyder twice told plaintiff in the presence of witnesses that at her death whatever she had was plaintiff’s; and that in completion of the contract, on or about August 15, 1917, Mary Snyder wrote and signed the following statement, which, however, was not executed as a will:
“I by rights will my entire estate to Rebecca Foltz for the good kind care she gave me.
“ [Signed] Mrs. Mary M. Snyder.”
The prayer of the petition asks that the defendant William Morris be declared trustee of the real estate formerly belonging to the decedent, charged with the duty of conveying the same to plaintiff, and that the defendant J. C. Boone, administrator, be ordered to turn oyer to plaintiff in compliance with the contract that share of Mary Snyder’s estate that should remain in his hands for distribution after the payment of the debts and costs of administration.
*567 Upon the facts as alleged in the petition, the plaintiff had three remedies open to her. She could sue upon quantum meruit for the reasonable value of her services; she could sue for damages for breach of contract, the damages being the value of the property at the time that it should have been conveyed to her under the contract; or she could sue for specific performance of the contract. That she chose the latter remedy is evident upon a cursory reading of the petition, which alleges every fact necessary to set out a case for specific performance. It alleges the execution of the contract, the performance by plaintiff, the default by defendant, and specifically describes the property claimed. It does not ask for damages, but asks that the heir and the administrator be ordered by the court to do the identical thing which Mary Snyder promised should be done. This is the very essence of specific performance.
The court, therefore, holds that the suit was one for specific performance, and not for breach of contract.
The question next arises whether a suit for specific performance to make a will for services is analogous to a will contest, so that the rule in Andrews’ Exrs. v. Andrews’ Admrs., supra, applies, and the administrator cannot be reimbursed for expenses of the defense, or is merely analogous to a suit upon a contract for services, or to a suit in specific performance of a contract to convey property in return for services, which the administrator would be required to defend, and in which defense he would be entitled to reimbursement for his expenses. Taking the question in the light most favorable to defendant in error, wherein does the difference lie be *568 tween defending a suit for specific performance of a contract to will all of decedent’s estate after payment of debts, in return for services to be performed,- and a suit, either at law or in equity, to énforce a contract made by decedent to pay so much for services, or to convey so much property in return for services, that the estate would be exhausted by payment of that specific claim? Prom certain aspects the difference seems only minor. The action for specific performance of the terms of a proposed will is necessarily based upon the principle of breach of contract, and so is the action for services, whether brought at law for damages or in equity for specific performance.
In each case, assuming that the proper steps to enforce the contract were taken, the balance of the estate, after the payment of other claims, in their proper order, would pass- to the person who had rendered the service to the decedent; and in each case the entire resources of the estate, after such payment of prior claims, would be applied to the extinguishment of a claim for services.
But, after all, there is a basic difference between a contract to make a will and a contract which creates a simple debt or ordinary obligation against the estate. Such a contract to make a will as Mary Snyder made creates a right to the estate; the contract which creates a debt creates a right to the assets of the estate. In a suit for specific performance of a contract to make a will, the attack is not made upon the assets. They are neither increased nor diminished by the suit. The assets of the estate remain the same in resource and in amount, but if the suit is successful the right to the assets may *569 vest elsewhere than it would vest under an intestacy, in accordance with the terms of the will which the decedent agreed to make.
In a suit upon a contract for services, on the other hand, or in a suit for specific performance of a contract to convey property in return for services, the attack is made upon the assets themselves. Incidentally, of course, in a suit for specific performance of a contract to make a will, the assets are involved; but the main question in such a case is who is entitled to the estate.- If the administrator contests the suit and is unsuccessful, the assets will be unimpaired; but the residue, or some part of the estate, after payment of debts and costs, will pass, not by virtue of descent and distribution, but according to the terms of an unwritten will. And this is true regardless of the form of action. The action for specific performance of a contract to convey property in return for services, and the action at law for damages upon a contract for services, alike attack the assets and not the right of inheritance.
This, after all, is the same difference that exists between a contract for services enforced against an estate and a will contest. The will contest and the action for specific performance here instituted, alike, are claims, not against the estate, but to the estate. In the basic feature, then, that this action fpr specific performance determines the right to receive the estate, it is identical with the will contest.
In still another respect, also, the defense by the administrator of this action for specific performance resembles the defense by the executor in a will contest. When an executor defends a will contest, if the will attacked is not the will of the testator, *570 the executor may be helping by his defense to defeat the real intent and wish of the testator. In this case, as a predicate to its decree, the Court of Appeals necessarily found that the intent of Mary Snyder was that Eebecca Foltz should receive the residue of the former’s property after her death. In defending the action which was brought to enforce that intention, the administrator tried to defeat the very purpose of the decedent whose estate he was administering.
With the determination, of the question as to who has the right to the- estate, the administrator has nothing to do. It is not for him to decide whether the estate passes by law to this or that person. The administrator is required to pay the debts and conserve the estate for the rightful distributees. When he uses a substantial portion of the assets, as he asks to do in this case, to contest the right of the lawful distributee, can he be said to have conserved the estate under his trust?
The court holds that the action for specific performance to enforce a contract to make a will is analogous to a will contest so far as the defense thereof by the administrator is concerned, that the reason of the rule in the case of Andrews’ Exrs. v. Andrews’ Admrs., supra, applies, and that the administrator is not entitled to reimbursement for expenses incurred in the unsuccessful defense of the specific performance suit.
It is no answer to this theory of the case that the administrator acted in good faith. With whatever motive he acted, he charged the estate with an expenditure which he was not bound to make and had no right to incur, and he did this at a time when the *571 heir, whose interest was assailed, was adequately represented by counsel.
But the defendant in error, says that an especial situation exists here because of the fact that he expected a will executed by Mary Snyder to be discovered and was on that account compelled to defend for the benefit of possible legatees under the will to be found. The record does not disclose this fact conclusively, for the administrator himself testifies as follows:
“We never gave up hope. I concluded finally, though, that there was not a will because I followed where.she went, from the time she left Salem, out into Oregon and Alliance, and different places where she taught school, and I learned where she would be apt maybe to — and I wrote to lawyers in different places. I had much correspondence concerning it; and I finally made up my mind that she hadn’t.”
Granting, however, that the administrator’s feeling as to the possible discovery of the will was unqualified, would the fact that he expected a will to be found later entitle him to expend the assets of the estate in this contest on behalf of possible legatees under the will to be found?
Plaintiff in error urges that this specific question is easily decided by the fact that the subsequent finding of a will would not affect the situation at all. She calls attention to the fact that, whether the will later found was executed prior to or after the making of the agreement between Mary Snyder and herself, under the circumstances here shown the agreement would constitute a binding and irrevocable contract. If the will found was executed *572 prior to the making of the ’contract, the contract would take precedence of the will,' just as any executed contract may' dispose of assets bequeathed or land devised by a will executed before the contract was-made.- If the will found was executed■ later than the contract, it could be probated, but a trust would be created under the contract in favor of the plaintiff, whereby the effect of the will would be modified in accordance with the contract. (Bolman v. Overall, Exr., 80 Ala., 451; 2 South., 624, 60 Am. Rep., 107; 40 Cyc., 1068, notes 97, 98 and 99, and cases cited.) In the Bolman case a will was executed December 1,1881, in consideration of care and services to be given the testatrix for- the rest of her life. The complainants alleged a faithful performance of these duties for over'seven yéars. In 1883 the testatrix became dissatisfied, left the home of the complainants, and executed another will, revoking the testament of December 1, 1881. The Supreme Court of Alabama held that a will when founded on a valuable consideration may constitute an irrevocable contract, and a trust in favor of the promisees under the contract (the beneficiaries of the first will) was fastened upon thé decedent’s estate after the probate of -the subsequent inconsistent will. That this doctrine- is followed in Ohio is shown by the case of Ralston v. McBurney, 6 Ohio App., 303, which holds that a will executed by a testator in pursuance of a parol agreement under which the testator for a valuable consideration agreed to devise certain real estate tó plaintiff may not be revoked by a subsequent will so as to escape the contract obligation, but may be enforced as a contract.
*573 Plaintiff'in error contends, therefore, that no succeeding legatee could rightly claim- under any will found after this contract between Mary Snyder and Rebecca Foltz was executed, and that the administrator was, therefore, under no duty to defend for possible legatees under such a later-to-be-discovered will. . .
This argument, however, is no answer to the fact that legatees under a will found subsequent to the granting of letters of administration would have a right to contest the claim of Rebecca Foltz, even though they had-no hope of winning the case. But how is the administrator to defend the right of possible legatees under a will subsequently found? Obviously he can protect their rights only by defending the suit for specific performance. The only, way in which the administrator could have defended the interests of such imaginary legatees was by contesting the claim of Rebecca Foltz and putting her to proof of the facts alleged in her petition. Now, if no one had appeared to defend Rebecca Foltz’s suit, the administrator might have had some argument in favor of his decision. However, William Morris, the heir at law, the person rightly interested in the contest, appeared in court adequately represented by counsel. He filed an answer and contested the specific performance case throughout all of the subsequent litigation. In fact, William Morris did in opposition to the Foltz claim all that the administrator could possibly do on behalf of legatees under a will to be subsequently found.
Without deciding the question as to how far legatees under a will subsequently found would be bound by a judgment in favor of Rebecca Foltz *574 in the specific performance suit, it can hardly be said that where the heir at law was actively contesting' the case the administrator was required, even though he had been convinced of the existence of a will, to use the assets of the estate, to which the court held Rebecca Foltz to be entitled, in opposing Rebecca Foltz’ rightful claim.
Counsel for defendant in error have cited the court to various cases which they claim support their position. Upon examination all but one fail to strengthen their case. In re Groff’s Estate, 215 Pa., 586, 64 Atl., 783, involved an allowance to executors for contesting ordinary claims against the assets of the estate. In Ackermann v. Ackermann (Tex. Civ. App.), 99 S. W., 889, the executor defended an action in which the title of the testator to certain land included in the estate was attacked.
The only definite authority to which defendant in error calls attention is that of Turnipseed v. Sirrine, 60 S. C., 272, 38 S. E., 423, the first proposition of the syllabus of which reads:
“It is the duty of an executor to defend a suit brought by a party - claiming the property passing under the will, under an agreement to make mutual wills, and it is better for him to get the sanction of the court as to attorney’s fees; but where he loses, and that is not done, the court will permit him to pay out of the trust estate reasonable fees to attorneys representing him in the fight, traveling expenses of his attorneys, necessary printing, witness fees, etc. Wham v. Love, Rice Eq., 51, distinguished from this.”
The Turnipseed ease was based upon the proposition that the executor is bound to maintain the *575 will, and therefore to defend an action for specific performance of a contract to make a will, even when the heirs are represented by counsel.
The court in the Turnipseed case does not question the authority of the Wham case, Bice Eq. (S. C.), 51, but in order to avoid conflicting with the rule announced therein draws a distinction between the facts in the two cases.
In the Wham case there was a contest between the distributees over the real and personal property of the estate. The administrator, Love, who was joined as a party in the contest, filed an answer and defended the suit. Love co-operated vigorously with the nieces and nephews of the intestate whose estate was in litigation. An application by the administrator to have counsel fees of certain parties to the contest allowed out of the estate was denied, the court holding that an administrator is entitled to all expenditures made by him for the preservation and benefit of the estate, but that costs and fees incurred by him in resisting the claims of distributees can never be allowed as a suitable charge on the estate.
The court in the Turnipseed case, at page 284 of 60 S. C., at page 427 of 38 S. E., says of the Wham case that—
“Love, as the administrator, was seeking to have the counsel fees of those persons who claimed to be distributees, and who were adjudged not to be said distributees, paid out of the estate of the plaintiffs, who had been adjudged to be the sole distributees of the estate of his intestate, in his hands as admin *576 istrator. The court properly refused to allow any such payments.”
Are not the facts in the Wham case similar to those in the present action? The administrator in this case co-operated vigorously with the heir at law in contesting the claim of her who was adjudged to he the sole distributee of the estate of his intestate. When he seeks to have counsel fees allowed for the expense of that litigation, he virtually seeks to have part of the counsel fees of the heir at law paid out of the estate of Rebecca Foltz, the distributee.
Under the authority of the Wham case, as acquiesced in by the Turnipseed opinion, the conclusion of this court is justified.
It would be an unfortunate holding which should give to administrators the power to decide that a will was somewhere existing after due search had been made for it, and upon that theory to use the assets of the estate in defense of a suit with which the administrator had no rightful connection. Such a holding would enable an administrator to defeat the purpose and waste the property of the very decedent whose estate he was appointed to conserve and protect.
For these reasons the judgment of the Court of Appeals is reversed, and the judgment of the court of common pleas affirmed.

Judgment reversed.

Marshall, C. J., Wanamaker and Day, JJ., concur.