# MARY R. YORK *v.* MARYLAND TRUST COMPANY, EXECUTOR.

*Inventory of Decedent's Estate—Assets to Be Included—Securities Outside of State—Qualified Possession by Executor—Commissions—Discretion of Orphan's Court —Income of Life Tenant—Charge of Interest on Loans.*

Conceding that assets of a decedent outside the state should not be inventoried by the executor in this state unless he secures possession of them, it cannot be said that the executor had not such a qualified possession of securities, pledged by decedent with bankers in other states, as to justify him in inventorying them, when an officer of the executor, a trust company, after being shown the securities by the pledgees, arranged with the latter to make sales thereof as directed by the executor, these sales were reported to the orphans' court by the executor as made by it, and the executor itself advanced a large sum to pay the balance of the loans secured, taking over and selling the securities held as collateral for these balances.          pp. 360, 361

A practice of the orphans' court of approving and ratifying inventories, where the whole estate is returned, regardless of the liens and claims against any or all of its assets, and of fixing commissions based on the inventory, is not at variance with the statutes, and appears to be justified by the provisions requiring the listing of all assets and of all debts.          p. 361

On an issue as to whether an executor's commissions should be calculated on the full market value of securities pledged by decedent with bankers in other states, or merely on decedent's equity in such securities, *held* that, the executor, a trust company, having obtained the consent of the bankers to sell the securities under the executor's direction, which was done with a resulting profit to the estate, the executor had such control of the securities as to justify it in considering them as assets, and the orphans' court in permitting them to be inventoried at their appraised value and allowing commissions on this amount.

p. 362

An executor should consider as assets all the chattels of his decedent, wherever situated, if by reasonable diligence he may pursue and possess himself of them, and under Code, art. 93, sec. 230, all such assets are to be inventoried. p. 362

The statutes vest a wide discretion in the orphans' court in fixing the amount of the commissions to be allowed executors or administrators, and in the exercise of that discretion the court can, by regulating the amount of commissions, compensate the executor or administrator in accordance with the skill and fidelity with which the estate has been administered. p. 363

As the settlement of an estate which is heavily indebted invariably requires more work and attention than does one which is comparatively free from debt, it seems the part of wisdom to permit the executor or administrator to place in the inventory all the property of the estate which in any way comes under his control, and to receive as his commissions such percentage on the whole estate as the court may, within the discretion given it by law, deem just. pp. 363, 364

Where testator's intention, as expressed in his will, does not indicate anything to the contrary, the life tenant under a trust of the residue of the estate is, at least in the absence of special circumstances, entitled to the income from such residue from the time of testator's death. p. 366

Provisions of a will that testator's debts be paid as soon as could conveniently be done, bequeathing sums named to a hospital and his wife, giving "all the rest, residue and remainder" of his estate in trust to pay "all charges and expenses necessary and requisite for the proper care, management and preservation of the trust estate," including reasonable compensation to the trustee, and then after paying a named annuity from the net income, to pay "the balance of said net income derived from said trust estate" to his wife, *held* to show testator's intention to give his wife certain income from the time of his death, free and clear of debts and expenses, but not to give her the income from his gross estate before the payment of debts and legacies.
pp. 366, 367

That the executor erroneously paid the income from the entire estate to the life tenant, charging against such income the interest paid, to carry securities deposited as collateral, pending the liquidation of testator's debts, did not harm the life tenant, the

income from securities sold to pay debts amounting to more than such interest, and the testator's intention, as indicated in the will, being that the life tenant was only to receive the income from the residue of the estate after the payment of debts.

pp. 367, 368

Testator's debts and the expenses of administration are payable from the corpus of the estate and not from the income, although the will indicates an intention that the life tenant shall receive only the income from the residue of the estate after payment of debts and legacies. p. 368

Where a life tenant is entitled to the income, such income, in the absence of a contrary intention expressed in the will, is confined to that received from the residue, and does not ordinarily include the income derived from that part of the principal used to pay debts, expenses, and specific legacies. p. 368

*Decided April 7th, 1926.*

Appeal from the Orphans' Court of Baltimore City.

Petition by Mary R. York in the nature of exceptions, alleging errors in the administration account of the Maryland Trust Company, as executor under the will of Roy F. York, deceased, to which petition said trust company and certain beneficiaries under the will filed answers. From an order dismissing the petition, the petitioner appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Leigh Bonsal,* with whom were *Bonsal & Lee* on the brief, for the appellant.

*Joseph C. France* and *Carlyle Barton,* with whom were *Frederick J. Singley* and *Niles, Wolff, Barton & Morrow* on the brief, for the appellees.

WALSH, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City overruling exceptions filed by the appellant

to the amount of commissions allowed, and the charging of certain interest items against income, in the administration account of the Maryland Trust Company, one of the appellees, as executor under the last will and testament of Roy F. York, deceased.

At the time of his death in October, 1923, Mr. York owned approximately $1,700,000 worth of property, most of which consisted of large blocks of stock in various Standard Oil Companies, and he owed about $1,000,000 to Messrs. Jessop & Lamont of New York, and various other bankers, who held most of his stock as collateral security for his loans. After qualifying as executor, the Maryland Trust Company sent Mr. Robertson Griswold, its trust officer, to New York and Cleveland to see about these loans and the securities pledged for them, and the record shows that he found that the bankers, at least in New York, had Mr. York's stocks in envelopes marked with his name and that these stocks were not commingled with the general assets of the bankers. Mr. Griswold then arranged to have the stocks sold as and when he directed, and as a result of careful management and the judicious sale of the stocks, in comparatively small lots and at different times, the estate netted about $47,000 over and above the original appraisement. This original appraisement, which included the testator's pledged securities listed at their market value, amounted to $1,688,223.73, and with the net profits of $47,137.84 made on the sales of part of the stocks, and the income and some other items received during the course of the administration, the total amount accounted for by the executor in the account under discussion was $1,804,825.16. The orphans' court allowed the executor commissions on this entire amount, at the rate of six per cent. on the first $20,000 and two per cent. on the balance, so that the executor, after paying the State tax on commissions, received $33,126.85 in commissions. The appellant, who is the widow of the testator and the life tenant under his will, objected to the payment of

these commissions, on the ground that the appraisement of the testator's estate should not have included the full market value of the securities pledged for his debts, but should have been based on the value of the testator's equity in these securities, which method of appraisement would have reduced the executor's commissions about one-half.

This precise question does not seem to have been passed upon in this state, and its determination is not without interest.

In section 4 of article 93 of the Code, relating to administration accounts, it is said: "In such account shall be stated on one side the assets which have come to his hands according to the inventory * * *; and all moneys received for debts due the decedent shall be included in said account." While in section 5 of article 93, it is provided that: "On the other side shall be stated the disbursements by him made, viz: * * * third, the debts of the deceased proved or passed, as herein directed, and paid or retained; * * * fifth, his commissions which shall be at the discretion of the court not under two per cent. nor exceeding ten per cent. on the first twenty thousand dollars of the estate, and on the balance of the estate not more than two per cent."

Sections 228 and 229 of article 93 exempt certain clothing and food from being inventoried, and section 230 provides that: "With the exception of the articles enumerated in the two preceding sections, all the assets of the deceased shall be included in such inventory." Section 231 provides that: "The following shall be deemed and taken for assets in the hands of an administrator, to wit: Leases for years, * * * and every species of personal property." And section 223 provides for additional inventories in case any property or assets of any kind not mentioned in any inventory already made "shall come to the possession or knowledge of an administrator." The foregoing seem to constitute all the statutory provisions in this state which could materially affect the question before us.

Turning to the decisions of the Court, we find that our predecessors, in the case of *Handy v. Collins,* 60 Md. 229, declined to allow an executor commissions on two bonds or single bills of a private individual. It appeared that the obligor on these bonds lived in Virginia, that the bonds had never been appraised or listed in the inventory, and that they were bequeathed specifically to the executrix, who was claiming commissions on their face value. The law at that time (section 5 of article 93 of the Code of 1860) provided that commissions should be based on the inventory, and the Court, after pointing out that these bonds simply represented a private debt, and calling attention to the provisions of the law regarding the listing of debts apart from the property included in the inventory, held that commissions could not properly be allowed on them, though it did say that bonds and stock in corporations "are properly appraised and go into the inventory."

Subsequently, by chapter 470 of the Acts of 1884 (now codified as section 5 of article 93), it was provided that commissions should be allowed on the estate instead of on the inventory, and the amount of commissions, within certain designated limits, was left to the discretion of the orphans' court. This law was before the Court in the case of *Hardt i. Birely,* 72 Md. 134, 138, and in construing it and deciding that certain private notes and bonds could be appraised and commissions allowed on the amount of the appraisement, the Court said: "Considering this section alone, independent of any decisions of this Court construing the law regulating the allowance of an executor's commissions prior to the Act of 1884, we do not think there can be any doubt as to its meaning. The executor is to have commissions on the amount of the estate which comes into his hands in the course of administration and with which he is properly chargeable, and for which his bond is responsible. The amount of the notes on which commissions were allowed is a part, and a valuable part of the testator's estate; but it is clear that, if the executor is to have commissions on the notes they must be

valued or appraised. For it would be unjust, in many cases, to allow commissions on the face value of notes and private securities. We can see no reason, however, why a value may not be ascertained for private securities in the same, or in some other more desirable manner as is now in use to fix the value of public securities, and the other items of the inventory."

The Court then distinguished that case from the case of *Handy v. Collins, supra,* chiefly on the ground that the law regulating the basis for fixing commissions had been changed; and also because in the *Handy* case the debtor lived in Virginia, and the Court held that the executor in Maryland could not, by virtue of his letters here, have sued in Virginia, nor could his bond have been rendered liable for the Virginia debt; and, finally, because the executor in the *Handy* case never acquired any control over any of the money due on the bonds.

These two decisions and the statutory provisions heretofore quoted seem to furnish the only rules which have any material bearing on the question under discussion, and it is apparent that none of them are conclusive of that question. Some of the language used in the opinions in the two cases just cited intimate that assets of a decedent located outside of Maryland should not be inventoried by a Maryland executor unless he secures possession of them, but this language was not necessary to the decision in either of those cases, and even if it had been the ground of the decision, it cannot be said that the executor in the present case did not acquire at least a qualified possession of the pledged stocks which are the subject of dispute. It is conceded that the trust officer of the appellee went to New York and Cleveland, that in the former place, where by far the greater part of the securities were held, he was shown the stocks of Mr. York; that these stocks were then sold by the bankers who held them, not at their own discretion, but at the direction of the executor, that these sales were reported to the orphans' court

by the executor as having been made by it, and that after about $600,000 had been paid to Jessop and Lamont, the executor itself advanced about $120,000 for the payment of certain balances due these and other bankers, and took over and sold the stocks held as collateral for these balances.

In addition to this, the record shows that Mr. York owned more than fifty thousand shares of stock distributed among thirty-nine different corporations, that he had varied interests in Baltimore, New York, Cleveland and Florida, that he owed large sums of money in various places, and that the liquidation of these obligations without serious loss and sacrifice required constant care and attention over a period of almost a year, that more than sixty claims of various sorts were made against the estate, the disposition of which involved a large amount of correspondence, that tax questions arose with various states as well as with Maryland and Baltimore City, and that the work of the executor also included the sale of a yacht in Florida, and the handling of a multitude of other details which would naturally arise in the working out of so large and intricate an estate. It also appears that, as a result of the careful management of the estate and the judicious sale of more than half the decedent's securities, a net profit of more than forty-seven thousand dollars over and above the inventory figures was realized. And finally, the orphans' court in its opinion says that "it is the long established practice of this court to approve and ratify inventories where the whole estate is returned regardless of the liens and claims against any or all of its assets and to fix commissions based on the inventory."

There is nothing in this practice at variance with our statutes, and in fact the provisions requiring the listing of all assets and of all debts would seem to indicate that this is the correct practice, at least so far as assets within the State of Maryland are concerned.

When it comes to foreign assets we find the general rule thus stated in 23 *C. J.* 1148: "An executor or administrator

qualifying in the state of the domicil of the testator has title ultimately to the assets, wherever they may be situated, subject, however, to the satisfaction of local creditors and claimants, and ought to consider all the chattels of his decedent wheresoever situated as assets, if by reasonable diligence he may pursue and possess himself of them." In the present case the executor did pursue the decedent's foreign assets, secured the consent of the creditors who held them to dispose of them in accordance with the executor's orders and directions, and by reason of its diligence, care and skill these assets netted the estate a profit in excess of $47,000. Under these circumstances, we think the orphans' court properly allowed these assets to be inventoried at their market value. It may be that the executor could not have prosecuted a claim for these assets in the states in which they were located, but in this case there was no need to prosecute any claims. The creditors who held these assets recognized the executor in Maryland as the ultimate holder of them, and, without the granting of ancillary letters or other legal formalities, they agreed to sell them for the executor as and when directed by it. These facts seem to us to dispose of the contention that the executor exercised no control over these assets, and to bring this case within the rule laid down in 23 *C. J., supra,* that an executor "ought to consider all the chattels of his decedent wheresoever situated as assets, if by reasonable diligence he may pursue and possess himself of them." And if they are assets, then, under the provisions of section 230 of article 93 of the Code, they were properly inventoried.

We express no opinion as to whether such securities should be deemed assets in a case where the executor exercised no control over their disposition, and only received the net proceeds resulting from their sale by the foreign creditors who held them, nor are we to be understood as passing on the question of whether the executor's bond in this case would have been responsible for the negligent sale of the securities, or liable in the event of the failure of any of the bankers who

held them. None of these questions are before us and we are not undertaking to decide them. We simply hold that, under the facts and circumstances of this case, as disclosed by the record, the Orphans' Court of Baltimore City committed no error in permitting these securities to be inventoried at their appraised value, and in allowing commissions on this amount.

It should be noted in this connection that our statutes vest a wide discretion in the orphans' court, in fixing the amount of the commissions to be allowed executors or administrators, and most if not all of the cases of hardship pictured by the appellant as possibly resulting from the placing of the full value of pledged assets in an inventory, where the sums secured by them are almost equal to the value of the assets, can be taken care of by regulating the percentage of commissions, and this method of handling the matter would seem to have been the intention of the Legislature. The purpose of administering estates is to enable all those entitled to it as creditors or beneficiaries to know what it is and to secure their just share of it. The listing of all property, whether pledged or not, in the inventory, and the returning of all debts due the decedent, show the gross value, while the claims passed against the estate show the obligations. The proper disposition of the property and the efficient collection of the debts may have a great deal to do with the final net worth of the estate, and it would seem that those interested should have the right to know how the executor or administrator carries out these duties. The whole matter is carried on under the direction and supervision of the orphans' court, and under the discretion vested in it by the law that court is able, by regulating the amount of commissions, to compensate the executor or administrator in accordance with the skill and fidelity with which the estate has been administered. And as the settlement of an estate which is heavily indebted invariably requires more work and attention than does one which is comparatively free from debt, it would seem to be in every way the part of wisdom to permit the

executor or administrator to place in the inventory all the property of the estate which in any way comes under his control, and to receive as commissions such percentage on the whole estate as the court may, within the discretion given it by the law, deem just.

It should also be noted that in the case now before us the remaindermen have filed an answer admitting that the commissions allowed were fair and reasonable, and consenting to their payment to the executor.

The next point to be considered is whether certain interest items paid the bankers on the decedent's loans, pending the liquidation of his accounts, should be charged against the income of the life tenants, as it was in the account stated below, or should be charged against the corpus of the estate. These items amounted to $8,953.97, and the appellant contends that, as the continuance of the loans on which this interest was paid resulted in the executor selling certain of the pledged securities at prices which added $47,000 to the corpus of the estate, the items should be charged against the corpus. The appellees, on the other hand, allege that as the dividends, received by the life tenant from the stocks pledged for the loans, exceeded the amount of interest charged against her income, the interest was properly so charged, and they further contend that it was the testator's intention, as disclosed by his will, that this interest should be charged against the income of his estate.

The leading case on this subject in Maryland is *Wethered v. Safe Deposit and Trust Co.*, 79 Md. 153, and in the course of the opinion, which was written by Judge Boyd, the Court said: "Annuities given by wills ordinarily commence from the testator's death, and according to most authorities, a bequest of the residue of the personal estate for life, with the remainder over, generally entitles the life tenant to the income, commencing with the death of the testator; certainly as between the life tenant and remainderman. Of course, the income from all the personal estate is as liable

for the debts of the decedent as the principal, and must be so applied, if necessary; but when the estate is ample to pay all debts, expenses of administration and legacies, and there still remains a considerable residue, the income of which is, by the terms of the will, to be paid to life tenants and then the corpus or principal to go to remaindermen, the above principles will apply, unless the testator has provided otherwise, or there be some peculiar circumstances which would change the general rule. If the intention of the testator can be gathered from the will, his wishes should be gratified in these matters as well as others, unless in conflict with some well established rules of law." It was then held, quoting for convenience from the head note, that "Where a testator gave all the rest and residue of his estate, of every kind, to one, in trust, to divide all the net income of his whole estate into five equal parts, and semi-annually to pay one portion to each of five named persons for life, with remainder over, the life tenants are entitled to the whole net income from the residue of the estate from the death of the testator and no portion of such income is liable for his debts or the costs of administration, the same being payable out of the corpus of the estate." It was further held in that case that the testator's will seemed to indicate an intention on his part that the debts and expenses be paid from the principal, and that under all the circumstances it would be inequitable to require the life tenants to pay the debts and expenses from the income.

In *Merryman v. Long,* 49 Md. 545, it was decided that the income received by the executor during the first year after the death of the testator should be applied to the payment of debts and expenses of administration, and in *Abell v. Abell,* 75 Md. 64, it was decided that the income was not responsible for debts and expenses. Both of these cases were discussed in the opinion in the *Wethered* case and all three cases, together with some others, were referred to by Judge Boyd in the course of his opinion in *Hunter v. Hersperger,* 96 Md. 292, 295, as follows: "In each of those cases the

decedent left a will, and while questions as to when interest should begin to run on various kinds of legacies and when incomes should be paid to life tenants were considered, the familiar principle that such questions must be governed by the intention of the testator when that can be ascertained from the will, was fully recognized and applied."

These authorities seem to establish that the most important consideration is the intention of the testator, and that where his intention, as expressed in his will, does not indicate anything to the contrary, the life tenant, at least in the absence of special circumstances, is entitled to the income from the residue of the estate from the time of the testator's death.

The will in the present case directs that all the testator's debts shall be paid out of his estate "as soon as the same can conveniently be done." It then bequeaths $5,000 to a hospital and $100,000 to the testator's wife, and then gives, devises and bequeaths "all the rest, residue and remainder" of his estate to the Maryland Trust Company in trust to pay "all charges and expenses necessary and requisite for the proper care, management and preservation of the trust estate," including reasonable compensation to the trustee. The will then directs the trustee to pay an annuity from the net income to the testator's mother-in-law, Mrs. Read, and it then provides that "the balance of said net income derived from said trust estate * * *, my said trustee shall pay over quarterly to my wife, Mary Read York, so long as she shall live." There are other provisions regarding the distribution of the remainders, and there is also a codicil, but these parts of the will throw no light on the matter under discussion.

It seems to us that the provisions above set out indicate an intention on the part of the testator to give his wife certain income from the time of his death, free and clear of debts and expenses, but we do not think they show an intention to give her the income from his gross estate. The will first

provides for the payment of his debts, which amounted to
nearly a million dollars; then, after making two bequests,
one of which was the sum of $100,000, or its equivalent in
securities, to his wife, it gave "the rest, residue and remain-
der" to the trustee, and directed the trustee, after paying a
small annuity to Mrs. Read, to pay "the balance of said net
income derived from said trust estate" to the testator's wife.

· There is no provision requiring the payment of the income
from the entire estate to the appellant; the will specifically
limits her income to the balance of income received from the
trust estate, and the trust estate is not the testator's gross
estate, but "the rest, residue and remainder" of his estate
after the payment of the debts and specific legacies. Even
if these provisions do not indicate clearly and positively an
intention on the part of the testator to limit his wife's income
to the income from his net estate, after the payment of debts
and legacies, they certainly cannot be said to indicate in any
way a contrary intention; and, as we saw above, in the ab-
sence of a contrary intention on the part of the testator ex-
hibited in his will, the general rule is that a life tenant,
though entitled to income from the death of the testator, is
only entitled to the income on the residue of the estate.

This principle, which is supported by the great weight of
authority, is clearly recognized in the *Wethered* case, *supra,*
in which Judge Boyd said: "Of course the income on so
much of the principal as must be sold and used for the pur-
poses herein stated (payment of debts and expenses), will
not be payable to the life tenants as the residue of the estate
is lessened to the amount of the principal so used." See also
40 *Cyc.* 1882 and many cases cited in notes.

In the present case the record shows that the income from
the entire estate was paid to the life tenant, and then the
interest paid to carry the securities pending the liquidation
of the testator's debts was charged against this income. We
do not think this method of accounting was correct, but,
under the facts of the case now before us, it did not harm
the appellant. The interest items amounted to $8,953.97,

while the dividends received from the securities actually sold to pay the testator's debts amounted to considerably more, though we have been unable to accurately ascertain their amount from the accounts shown in the record. We do not find in the testator's will any expression of intention that the debts should be paid from income, but we do think there is an indication that the wife was only to receive the income from the residue of the estate, after the payment of the debts, and under these circumstances it is clear that the rules laid down in the *Wethered* case and the other authorities heretofore cited should apply, and these rules are: (1) that the debts and expenses are payable from the corpus and not from the income; and, (2) that where a life tenant is entitled to the income, such income, in the absence of a contrary intention expressed in the will, is confined to that received from the residue, and does not ordinarily include the income derived from that part of the principal used to pay debts, expenses and specific legacies. It accordingly follows that in this case the interest items should have been charged against the corpus of the estate, but it also follows that, since there was no contrary intention expressed in the will, the life tenant was not entitled to receive the dividends derived from the securities sold to pay the testator's debts, and as these dividends exceeded the amount of interest charged against her, she has suffered no injury. As a matter of fact, she has been overpaid, but as all the appellees have asked that the account be affirmed, we are not disposed to disturb it.

The rule we have announced would also seem to be supported by reason, because if the life tenant is to receive the income from the gross estate while the corpus bears all the debts and expenses, it can readily be perceived that pending the settlement of the estate the corpus might become seriously impaired. For instance, in the present case, if it had taken four or five years to dispose of the assets at advantageous prices, and during this time the interest charges on the million dollar debt had been charged against the corpus, while the entire income went to the life tenant, the principal would

have been depleted to the extent of two or three hundred thousand dollars, and in an extreme case the whole estate might be absorbed.   On the other hand, under the rule we have applied the life tenant gets the income from the residue of the estate from the time of the testator's death.   That is all the life tenant is entitled to after the estate has been settled, and in the absence of a contrary direction in the will, we are unaware of any sufficient reason why she should receive more while the estate is being administered.

Some mention is made in the briefs regarding the counsel fee allowed the attorneys for the executor, but our understanding at the argument was that no objection was being made to this item; so we will not discuss it further.

Finding no error prejudicial to the appellant in the order appealed from, it will be affirmed.

*Order affirmed, with costs.*