EX PARTE GAREY, EXECUTOR

[No. 95, October Term, 1952.]

 

*Decided March 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Thomas J. Keating, Jr.,* for the appellant.

*Francis D. Murnaghan, Jr., Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the *amicus curiae.*

SOBELOFF, C. J., delivered the opinion of the Court.

The correct method of computing the tax on an executor's commissions is the question to which our attention is directed by this appeal.

The appellant, as executor of the estate of the late John J. Raskob, having filed his first administration account showing a total personal estate of $11,643,791.64 and a tax of $23,447.58 on his commissions, and having paid the same, later filed an *ex parte* petition in the Orphans' Court of Queen Anne's County, praying to

be allowed to correct his account by reducing the tax to $17,244.22. The difference of $6,203.36 is the amount of the tax computed at the rate of one-fifth of one per cent on the indebtedness of $3,100,000 plus interest which the decedent owed to a family holding company, known as Radelco Corporation. At the time of his death the decedent owned 83.5%, and his family the rest of the stock, in Radelco. Another way of stating the matter is that the executor now contends that in calculating the estate (which is the basis of the tax on the executor's commissions) the Radelco stock should not have been included at its full market value, but that this sum should have been reduced by offsetting the amount of Mr. Raskob's debt to the corporation. From a denial of the prayer of the petition the executor has taken this appeal.

The pertinent statute is *Art. 81, Sec. 143*, of the Annotated Code of Maryland (1951 Edition), which reads as follows: "All commissions allowed to executors by the Orphans' Courts of this State shall, except as provided in Section 172 of this Article [not here involved], be subject to a tax, for the benefit of the State, of an amount equal to one per-cent on the first Twenty Thousand ($20,000) Dollars of the estate, and one-fifth of one per cent on the balance of the estate, and said tax shall be due and payable whether the executor waives his commissions or not, it being hereby intended that no commissions less than this tax shall be allowed by the Orphans' Courts of this State, and that no waiver of commissions or devise or legacy as compensation or in lieu of commissions shall defeat the payment of this tax."

Soon after Mr. Raskob's death, the executors turned in the estate's stock holdings in Radelco to the corporation and received from it a *pro rata* share of the securities owned by it. The estate's *pro rata* share of the corporation's net cash and receivables amounted to $2,743,993.98. Against this, in the settlement between the corporation and the executor, the estate's indebtedness of $3,100,000

was off-set, resulting in a net payment by the executor to the corporation of the balance of $356,006.02 plus interest.

Before the passage of the Act of 1884, Chapter 470, now codified as *Section 5 of Article 93* (Code of 1951), commissions were allowed on the "inventory or inventories", excluding what was lost or perished. By the Act of 1884 it was provided that commissions should be computed on the "estate". The tax on commissions was formerly calculated on the amount of the commissions, but since 1916 the statute above quoted requires the tax to be computed on the estate regardless of the amount actually allowed or paid as commissions.

The appellant attaches a special significance to this change in formula. He points to it as lending support to his contention that only the net amount (*i.e.,* the value of the stock less decedent's indebtedness) should have been included in the estate, and that only the net amount is the proper basis for computing the allowable commissions and the tax thereon. While the appellant acknowledges that the calculation of commissions and of the tax thereon is based on the gross value of the estate and not on the net value after deduction of debts and expenses, he nevertheless maintains that the question here is the proper method of valuing one of those assets, namely, decedent's stock interest in Radelco Corporation. The executor insists that the true value of this asset is not the fair value of the stock itself, but such value diminished by the $3,100,000 debt the decedent owed the corporation.

To achieve the desired result the appellant urges this Court, as he urged the Orphans' Court, to be "realistic", and to treat Mr. Raskob's indebtedness to Radelco Corporation as essentially an indebtedness to himself. This would require us to disregard the corporate form and to treat Radelco Corporation as Mr. Raskob's *alter ego.* The precise point has not been decided in this State, but we turn first to somewhat analogous cases to learn the general trend of the Maryland decisions and to

discover what if any answer they indicate to the question raised here.

In the case of *York v. Md. Trust Co.,* 150 Md. 354, 133 A. 128, 46 A. L. R. 231, the decedent owned property most of which consisted of large blocks of stock worth about $1,700,000, but he had delivered this property to bankers as collateral for a loan of approximately $1,000,000. The executor arranged for the sale of the stock in small lots and at different times at prices yielding more than the original inventory value, and liquidated the bankers' loans. The controversy was between the widow of the testator and the executor over the allowance of commissions. The executor claimed commissions on the estate computed at the full market value of the pledged securities, while the widow contended that commissions should have been based on the testator's equity in these securities. The Orphans' Court, having regard for the extent and the nature of his services, upheld the executor's claim and was affirmed on appeal. This Court noted that the availability of an asset to an executor gives him such qualified possession, though physically held by a creditor as pledgee, as to justify inclusion of the gross asset in the estate for the purpose of calculating commissions.

Judge Walsh's opinion in that case is interesting here chiefly because it carefully reviewed the earlier cases, particularly *Handy v. Collins,* 60 Md. 229, and *Hardt v. Birely,* 72 Md. 134, 19 A. 606, tracing the statutory changes made from time to time in respect to the calculation of commissions. In *Hardt v. Birely,* this Court said it could see no reason why a value may not be ascertained for private securities in the same or some other more desirable manner as is now in use to fix the value of public securities. This was decided after the Act of 1884 had shifted the basis for computing commissions from "inventory" to "estate", and the Court distinguished *Handy v. Collins,* decided under the earlier statute, which as interpreted excluded from "inventory" certain private bonds.

Appellant correctly points out that *York v. Md. Trust Co.* involved, as we have seen, no question of tax on commissions. It is obviously true, however, that if securities, whether listed on the market and freely traded in or closely held, are includable in "estate" in calculating commissions, they are certainly includable in "estate" in computing the tax on commissions. The present statute, *Sec. 143 of Article 81*, contemplates a tax on full maximum allowable commissions, measured by the entire estate even though the commission actually allowed and paid may be less; but no possibility is left open under the statute for a tax on commissions measured by less than everything properly includable in computing "estate" for the purpose of fixing the commissions themselves.

The appellant says that his case is distinguishable from the *York* case, because in the latter the estate's indebtedness was to a third party (the bank) while here "the decedent's indebtedness, being to the corporation issuing the stock, the debt had a direct bearing upon the value of the decedent's stock." He relies heavily on three New York cases not decided in the Court of Appeals of that State. Two of these involve situations quite similar to the one at bar. It must be borne in mind that the New York Statute treating of executor's commissions fixes them with reference to "receiving and paying out all sums . . .", *Surrogate's Court Act, Sec. 285*, in contradistinction to the amount of the "estate", the basis under Maryland law.

In the two New York cases involving corporations in which the decedents held stock and to which they were indebted, the courts refused to allow executor's commissions on the gross amount without regard to the debt, on the ground that there was no "receiving and paying out" within the meaning of the statute. *Matter of Dunigan's Will*, 177 Misc. 212, 30 N. Y. S. 2d 38, and *Matter of Schmoll's Estate*, 193 Misc. 203, 83 N. Y. S. 2d 743. In the former the court disregarded the corporate entity of a one man wholly owned corpora-

tion, for the purposes of deciding executor's commissions where decedent owed a debt to his corporation. In that case it is significant that the decedent held 100% of the stock, while in the instant case decedent held but 83.5%, consequently the precise question of the Dunigan case is not before us, since the interests of third persons in Radelco distinguish the two cases.

*Carozza v. Federal Finance and Credit Co.*, 149 Md. 223, 238, 131 A. 332, 43 A. L. R. 1, generally limits disregard of the corporate entity where the corporation is wholly owned by one individual, to cases where this is necessary to prevent frauds and impositions, or to enforce superior equities. See also, *1 Fletcher Cyc. Corp.* (Perm. Ed.) 134-176; *Dollar Cleansers v. McGregor*, 163 Md. 105, 108, 161 A. 159; *Hammond v. Lyon Realty Co.*, 163 Md. 442, 451, 470, 163 A. 480; *Hock and Co. v. Strohm*, 166 Md. 253, 256, 170 A. 738; *Waller v. Waller*, 187 Md. 185, 191, 49 A. 2d 449. Decedent created Radelco in order to enjoy the advantages that the corporate device offers. With its benefits must come its burdens. We do not accept appellant's argument that the corporate veil should be lifted for the purpose of computing the state tax on the executor's commission. Disregard of the corporate entity to effectuate a diminution in state taxes would be a novel extention of the recognized grounds, to which this court is not inclined.

If we are to be realistic, as we are bidden by the appellant, we cannot overlook the fact that the executor, though not holding all the stock in Radelco, nevertheless dominated that corporation. His was the decision as to how he would liquidate his holdings in that corporation and how he would discharge the estate's debt to it. It was in his power to effect a virtual liquidation of Radelco and to apply his share of its assets toward the payment of the estate's debt to it. This is the course he preferred. He could, if he chose, have sold the stock for cash to a third person, using the cash to reduce the debt to Radelco; or he could have wound up the Company,

received his share of its assets and used it to pay off this debt or used it elsewhere. The method adopted is not important for, as we view it, the tax would have been precisely the same. The significant fact is that in the circumstances of this case the executor had it in his power to obtain possession either of (a) the sale price of the Radelco stock, or (b) his share of its underlying assets and to satisfy the estate's liability, or part of it, by surrender of the stock; or (c) he could, as he did, effect a liquidation of the stock and the debt in a single step. This degree of mastery over the gross assets, viewed realistically, under the rule recognized in the *York* case, *supra*, justifies inclusion of the undiminished value of the Radelco stock in the "estate" in measuring the tax on commissions. In the *York* case, where the securities were pledged to secure the debt, there was a stronger basis than in the case at bar for arguing that only the net sum realized should be included in the "estate". Here we have no pledge of the stock, and it could have been sold at the executor's option free of the debt. If the total securities were includable without diminution for the debt in the *York* case, *a fortiori* the same result is required here.

The third case relied on by the appellant, *Matter of Lilienthal's Estate*, 83 N. Y. S. 2d 742, is one where the Surrogate rejected an executor's claim for commissions on an amount from which no deduction had been made of the decedent's indebtedness to a partnership of which he was a member, on the ground that the debt constituted a set-off against the decedent's partnership interest. There, clearly, neither the New York rule of "receiving and paying out", nor the Maryland rule, could operate in the ordinary case where the partnership is wound up by the survivor and the net amount is turned over to the personal representative to entitle the latter to a commission undiminished by the decedent's debt to the partnership. See *Article 73A, Sec. 37,* Annotated Code of Maryland (1951 Edition).

As *amicus curiae,* the Attorney General, in his brief, cites *Doherty v. Stoner,* 83 U. S. App. D. C. 365, 169 F.

2d 965, a District of Columbia case in which the question arose as to computation of executor's commissions with regard to a decedent's bank account. At decedent's death, the account consisted of $44,000, but thirteen days later a $25,000 note of decedent held by the bank matured, against which account the note was charged. Refusing to apply the "paying and receiving" test under a statute providing for computation of an executor's commission as a percentage of the inventory, the court held commissions were to be calculated on the basis of $44,000 rather than $19,000.

So also, where a decedent's personal property had been made the subject of a bill of sale, intended to operate as a chattel mortgage, this court has held that the inventory should include the full value of the chattels, not merely decedent's equity. *State, use of Horsey v. Md. Cas. Co.*, 164 Md. 69, 75, 163 A. 856. While this case did not deal with the immediate question of executor's commissions or the tax due thereon, it sheds light on our problem for it illustrates the theory uniformly followed in this State in determining the "estate" of a decedent.

We conclude that the tax was correctly computed in the original account.

It remains but to notice the way in which the question has been raised in this case. The petition for leave to revise the administration account and to retrieve a portion of the tax paid on the executor's commissions was filed *ex parte*, although the matter is one of direct concern to the State Treasury. The Attorney General, representing the State's interest, entered the case only as *amicus curiae*. While we have passed over this circumstance because counsel who argued the matter have requested us to do so, we nevertheless do not wish to give approval to this procedure and it should not be regarded as a precedent to be followed.

*Order affirmed, with costs to amicus curiae.*